LARDIE v. TRAVERSE CITY IRON WORKS.

SALES—WARRANTY—EVIDENCE.

 Evidence, in a suit for breach of warranty of a motor truck, considered and *held*, insufficient to support a recovery, and not tending to show a breach, or that the seller had warranted the truck in any way differently than the manufacturer whom he represented had warranted it.

Error to Grand Traverse; Lamb, J. Submitted October 14, 1915. (Docket No. 84.) Decided December 21, 1915.

Assumpsit by James Lardie against the Traverse City Iron Works for breach of warranty of a truck. Judgment for plaintiff. Defendant brings error. Reversed.

*H. C. Davis* and *Parm C. Gilbert,* for appellant.

· *Patchin & Duncan,* for appellee.

It is alleged in the declaration that on or about September 15, 1913, as an inducement to a purchase by the plaintiff of the defendant of a certain motor truck, defendant promised and represented to plaintiff that it was practically a new truck, had been used very little as a demonstration truck by the manufacturers, was as good as a new truck except for the wear upon the tires, had been overhauled, recalipered, and remachined by the manufacturers, was as good as a new machine and in perfect condition; that it would make 14 miles an hour; its carrying capacity was one ton; it would do plaintiff's work satisfactorily, that defendant understood that the use to which plaintiff would put it was carrying loads from plaintiff's home near Old Mission, Mich., to Traverse City; that, relying upon these promises, the plaintiff purchased the truck for $1,150 and paid for it; that it would have been worth $1,150 if it had been of the kind and in the condition that it was represented and warranted to be by the defendant, but that in fact it was worth, when delivered, not to exceed $400; it was not practically a new truck, but was an old machine, and had been used a long time, and its parts were badly worn; one of the cylinders was scored, all of them badly worn; the truck did not have the power that it was represented to have;

the steering arm was worn and in such condition as to make it unsafe to operate the truck; the transmission gear and the other parts were worn and defective; it was not a good truck for the purposes for which it was purchased; had not been thoroughly overhauled, recalipered, and remachined by the manufacturers; it did not have a carrying capacity of one ton; it would not do plaintiff's work satisfactorily, nor in the manner that a good truck in good condition would do it. The defendant pleaded the general issue. Upon the trial it appeared, and is not disputed, that defendant, to the knowledge of plaintiff, was the agent at Traverse City, Mich., of the Federal Motor Truck Company of Detroit; that the defendant sold the plaintiff a truck for $1,150, at Detroit, and the plaintiff paid for it. The conditions of the sale are in dispute, and the relevancy and effect of testimony which was introduced respecting the terms and conditions of the sale were at the trial, and are now, made a matter of contention. It is the plaintiff's theory that he had a parol warranty from the defendant, for a breach of which he brings this action. It is the theory of the defendant that the only warranty the plaintiff had was the warranty of the manufacturers, and that the defendant by parol offered its own responsibility in addition to that of the manufacturers with respect to the manufacturers' warranty, and no other.

It is agreed that the truck which was sold and purchased was a second-hand truck, had been used by the manufacturers, and that it was purchased, as above stated, for the price of $1,150; that the defendant knew that the manufacturers had the truck, that it was for sale, the price at which it could be furnished, and informed the plaintiff; but it also appears that, as a part of the negotiations for its purchase and sale, the plaintiff signed a contract, addressed to the Federal Motor Truck Company, Detroit, Mich., a blank form of

which the defendant had, which gave the model, the purchaser's name, the wheel base, the purchaser's address:  . .

"Make of tires, same as now on.  Kind of business, general farming.  *   *   *   Lettering, Fruit Ridge Farm, Old Mission.  Prices, Chassis and seat, in priming coat, $1,800.00.  Price painted, $1,815.00"

—with other details.  This was signed by the plaintiff. The blank under the signature of the purchaser which reads:

"Accepted at Detroit, Michigan, by Federal Motor Truck Company.  By——,"

was not filled in, but the further indorsement was:

"Sold by Traverse City Iron Works.  By H. O. Joynt."

On the back of this instrument was a printed guaranty, the principal and important portion of which is:

"We guarantee Federal Motor Trucks against defective material and workmanship for a period of one year from date of shipment, and will replace free of charge any parts broken by reason of such defects, providing such parts are returned to our factory for our inspection, transportation charges prepaid, tagged with the name of the sender, the number of the truck from which part was taken and the reason for returning.

"This guaranty does not apply to claims arising from accidents, misuse, neglect, nor does our guaranty apply to chains or special equipment.

"Our guaranty ceases on any Federal truck on which the governor seals have been broken.

"The purchaser understands and agrees that no other guaranty of the Federal Motor Truck is made, or authorized to be made by the company or its agents, other than the above set forth."

This has below it the printed signature:  "Federal Motor Truck Co.," and, following that:

"This contract is subject to the approval of an executive officer of the Federal Motor Truck Company,

and will not be binding on said company until so approved."

This contract or order was made in duplicate, one duplicate being sent to the manufacturers at Detroit, and, as has been stated, the truck was shipped from Detroit and delivered to the plaintiff at Traverse City, Mich. The contract or order referred to describes the truck which was to be sold without mentioning whether it is a new or old truck, but the price stated is the price of a new truck and is not the price at which the particular truck was to be sold. The plaintiff testified that Mr. Joynt, representing the defendant, having requested the plaintiff to call and see him, said:

"That he had been to Detroit to the company, and that they had a truck down there that had been used at the factory as a demonstrating car, and later on he said it was a pick-up-car, that they could make me a price on that that would suit me all right, somewhere in the neighborhood of $1,150 or more. That it would be as good as a new truck in every respect except what wear there had been on the tires, and that they would stand up the same as a new car, and they guaranteed to give me satisfaction, and that they would take care of it in case anything went wrong, the same as they would their new cars, and I told Mr. Joynt that I knowed nothing about the car whatever, but if they would guarantee it, and the company would stand back of that guaranty, too, that I didn't feel that I was taking any chances in that case and would buy, and I gave him an order for the car."

He further testified that the written order referred to was the only order he ever gave for the truck. The plaintiff further testified:

"I have stated in substance my talk with Mr. Joynt in regard to the purchase of this truck. He described the truck to me. He said that it was a truck that had been slightly used at the factory as a demonstrating car, and later he mentioned a pick-up, and that the car was in every respect as good as new, that it had been

put through the factory, recalipered, remachined, and that everything was in good condition, and that they would guarantee it the same as a new car, and—well, I think that's all the guaranty that was put on it.  They told me to bring it back to them if it proved in any way defective."

Plaintiff further testified that the defendant gave him a book, telling him that he would find the guaranty in there; that he turned over to it in the book.  "He said that was the warranty under which this machine was delivered to me."  The warranty so called to his attention is not materially different from the one printed on the other sheet of the contract, and reads:

"We warrant the new motor trucks manufactured by us to be free from defects in material and workmanship; this warranty being limited to making good, at our factory, any part or parts thereof which shall, within one year after delivery of the truck to the original purchaser, be returned to us with transportation charges prepaid, and which our examination shall disclose to have been thus defective.

"This warranty shall not apply to any truck which shall have been repaired or altered outside of our factory in any way, so as, in our judgment, to affect its stability or reliability, nor to any truck which has been operated at a speed exceeding the factory rated speed, or loaded beyond the factory rated load capacity, or which has been the subject of other misuse, negligence or accident.

"We make no warranty whatever in respect to tires, rims, chains, ignition apparatus, lamps, gas tanks, signaling devices, generators, batteries or other trade accessories, inasmuch as they are usually warranted separately by their respective manufacturers.

"The foregoing obligation to make good any defective parts returned as herein provided is in lieu of all other warranties, expressed or implied, and of all other obligations or liabilities on our part, and we neither assume nor authorize any other person to assume for us any other liability in connection with the sale of our trucks."

Plaintiff testified that, if the truck had been as it was represented to be, it was worth $1,150, and it appears that, after the plaintiff had had the truck for some time and had made various complaints about it, the defendant offered to allow him $1,000 for it as a part of the purchase price of a new truck. There was testimony tending to prove that there is no market value or price for second-hand trucks. Plaintiff had never operated a gasoline car, and he made various complaints about it, and the defendant undertook to and did, as he complained, examine the truck or have it examined and remedied, or have remedied such infirmities in its operation as plaintiff called attention to. In new parts alone, nearly $200 was spent upon the truck, without cost to plaintiff.

At the close of plaintiff's testimony, the defendant moved for a peremptory instruction, as follows:

"That the court now order that, in this case, the plaintiff be limited in his right of recovery, if any, to a breach of the written or printed warranty annexed to this order that has been introduced in evidence, and the same thing as set out in the catalogue that the plaintiff introduced; the first one being Exhibit A, and the other one Exhibit B.

"That, under the testimony in this case, the only part of that warranty that would be available here would be in regard to defective material and workmanship; and it would be the duty of the plaintiff, if he claimed any such defect, to produce the parts and call the attention of the vendor to the same and request that they be replaced or made good, remedied; and that the plaintiff shall be limited to that warranty; and that there is no other warranty upon which he can recover.

"We ask, *second*, that the court direct a verdict in this case of no cause of action, for the reason that the plaintiff has not shown any right of action here, thus far; that there has been no defect or default shown or proven, that would in any way violate the written guaranty, or printed guaranty, or render the defendant liable under the same.

"(3) That there is no right of action shown here against the defendant, because, if there was any bargain made, it was simply that the defendant company, the Traverse City Iron Works, acted as agent of the Federal Motor Truck Company, and Mr. Lardie knew that, and says he understood it when he bought the machine."

This was refused.  The defendant then introduced testimony tending to prove that except that it was a used truck the truck when it was delivered on board cars in Detroit was in good condition, had been examined, recalipered, remachined, and in every respect put in good and workable condition, that the governor was sealed, that it was sealed when it arrived at Traverse City, that the seal was not broken by the defendant or its agent, and that the truck in fact when last inspected and run by the defendant or any of its agents was in good condition and performed, when operated by a competent person, the service required of it.  Defendant renewed the motion made at the close of plaintiff's testimony, and it was again refused.  The court submitted to the jury as a question of fact whether there was any special warranty such as is relied upon by the plaintiff in the declaration, saying to them that if all the warranty there was was that one printed on the back of the order and in the little book, and that that had been fulfilled—not breached—then the verdict should be for the defendant.  He also charged the jury:

"If you should determine, from the testimony in the case, bearing upon that proposition, that the defendants were obligated by the warranty entered into between the parties, simply to remedy such defects as should be brought to its attention, and further find that the defendant has remedied all such defects that have been brought to its attention by Mr. Lardie, then your verdict in that case will be, No cause of action."

The court instructed the jury further:

"It is claimed by the plaintiff, Lardie, and his action in the case is based on the claim, that, at the time of the making of the contract for the sale and purchase of said truck, the defendant entered into a contract of warranty with the plaintiff, whereby said defendant promised and warranted that the said truck should be and was practically as good as new, except the tires, that it had been thoroughly overhauled and remachined and was in perfect condition, that it would develop 28 horse power, make 14 miles an hour and carry a ton over such roads as the plaintiff had to travel in going to and from Old Mission to Traverse City."

Upon the subject of damages the jury was instructed that the rule for determining the amount of damages was the difference between the actual value of the auto truck at the time of its delivery to the plaintiff for the purpose for which it was bought and used and the amount paid for it by Mr. Lardie at the time of the purchase, in determining which they would take into consideration all the evidence in the case.

The court was requested by defendant to instruct the jury:

"I. You are instructed that the order signed by Mr. Lardie was directed to the Federal Motor Truck Company, and that Mr. Lardie should not recover against the Traverse City Iron Works, and your verdict must be, no cause of action, for that reason.

"II. You are instructed that all the defendant was obliged to do was to remedy such defects as Mr. Lardie brought to its attention. That is, when Mr. Lardie found any defects, it was his duty to report the same to Traverse City Iron Works, and allow them to correct same. If you find the Traverse City Iron Works had remedied such defects and replaced such parts as it has been asked to do by Mr. Lardie, then it has done its full duty, and your verdict should be, no cause of action.

"III. I instruct you that the only warranty that you can consider is the written warranty as attached to the original order as set forth in this catalogue which Mr. Lardie has put in evidence.

"IV. If you find the written warranty has been fairly and reasonably fulfilled by the Traverse City Iron Works, then your verdict must be, no cause of action.

"V. I instruct you, there is no proof in this case upon which to base a judgment for damages. There is no proof of the value of the truck in question, except the purchase price at the time Mr. Lardie bought it, and you cannot find this truck to be worth less than such purchase price."

The jury returned a verdict in favor of the plaintiff for $500, and judgment was entered on the verdict. Defendant moved for a new trial, which was denied.

OSTRANDER, J. (*after stating the facts*). In my opinion, the testimony of the plaintiff, fairly interpreted, means no more than that the truck was sold with the warranty which was given by the manufacturer upon the sale of a new truck. It is also improbable that defendant gave, upon the sale of a second-hand truck, a warranty broader than the manufacturer and vendor gave upon the sale of a new truck. There were certain representations made by defendant respecting the condition of the truck, as a second-hand, used vehicle. But the guaranty, or warranty, which defendant gave, or made, was the identical warranty of the manufacturer, made known to and understood by the plaintiff. The order was accepted by the manufacturer by delivery of the truck upon the order which plaintiff made. The principal contract was between the manufacturer—vendor—and the plaintiff, and was fully executed. Assuming that a consideration moved to defendant for the additional parol warranty, there is no testimony tending to prove that it was other than the printed warranty of the manufacturer or that there had been a breach of it. The jury should have been instructed that defendant's parol warranty was identical with the printed warranty, and that no breach of it had

been made out. This view of the matter requires a reversal of the judgment and, if plaintiff is so advised, a new trial. Other questions debated by counsel are not likely to arise upon a new trial, although it may be pointed out that it is doubtful if any evidence of the value of the truck supports the verdict.

Judgment reversed.

BROOKE, C. J., and PERSON, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.